# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STANLEY B. TULIN,** *et al.*, | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 25-1721** |
| v. | : | |
| | : | |
| **J.P. MORGAN CHASE NATIONAL CORPORATE,** *et al.*, | : | |
| | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                       AUGUST 14, 2025

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiffs Stanley B. Tulin and Riki Tulin, husband and wife ("Plaintiffs") filed this action against their bank, J.P. Morgan Chase Bank, N.A., and other J.P. Morgan affiliated entities (collectively, "Defendants"), in which they assert claims of J.P. Morgan's negligence and breach of fiduciary duty, that resulted in the loss of millions of dollars from Plaintiffs' JP Morgan accounts. Before this Court is Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3) for improper venue or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a) and an express forum selection provision in a promissory note corresponding to Plaintiffs' line of credit with JP Morgan. For the reasons set forth herein, Defendants' motion to dismiss for improper venue is denied, and the alternative motion to transfer venue is granted. Accordingly, this matter is transferred to the United States District Court for the Southern District of New York.

**BACKGROUND**

When ruling on a defendant's motion to dismiss, this Court accepts, as true, the well-pled factual allegations in the operative complaint. Briefly, the facts alleged relevant to Defendants' motion are as follows:

In 2010, Plaintiffs obtained a line of credit with JP Morgan Chase Bank, memorialized in an executed written promissory note (the "Note") between JP Morgan Chase Bank and Plaintiffs. The Note contains a forum selection clause, which provides:

> [t]o the maximum extent not prohibited by applicable law, the Borrower hereby irrevocably: (i) submits to the jurisdiction of any New York State or United States federal court sitting in New York City over any action or proceeding arising out of this note, (ii) agrees that all claims in respect of such action or proceeding against the Bank may be brought only in a New York State or federal court; (iii) agrees that any action or proceeding brought against the Bank may be brought only in a New York State or United States federal court sitting in New York City, (iv) consent to the service of process in any such action or proceeding in either of said courts by mailing thereof by the Bank by registered or certified mail, postage prepaid, to the Borrower at its address specified on the signature page hereof, or at the Borrower's most recent mailing address as set forth in the records of the Bank; and (v) waives any defense on the basis of an inconvenient forum.

(ECF 8-4, at p. 6 ¶ 9).

Plaintiffs allege that they are victims of a Ponzi scheme led by Scott Mason (a non-party to this action) who was a financial advisor at Rubicon Wealth Management based in Pennsylvania. Plaintiffs retained Mason in the late 1990s. According to Plaintiffs, Mason fraudulently extended Plaintiffs' line of credit without their knowledge or permission and made unauthorized transfers from the line of credit to his own bank accounts. Mason did so by continuing to sign iterations of the 2010 Note on behalf of the Plaintiffs without their knowledge or permission. Mason's unauthorized extension on the line of credit and draws therefrom occurred under suspicious circumstances that should have been apparent to JP Morgan. Nevertheless, JP Morgan allowed Mason to continue drawing millions of dollars from the line of credit without proper authorization. In January

of 2025, Mason pled guilty to defrauding Plaintiffs and other clients and was sentenced.

On the venue issue, Plaintiffs assert that:
- they have maintained their primary residence in Villanova, Pennsylvania "during the primary period of time the acts and occurrences that are the subject of this suit occurred." (Stanley Tulin Decl., ECF 11-1, at ¶ 3);
- they retained Mason as a financial advisor, who, at the time of the events in this action, maintained his practice in Gladwyne, Pennsylvania;
- Mason's employer, Rubicon Wealth Management, is headquartered in Gladwyne, Pennsylvania;
- Defendants regularly sent communications regarding Plaintiffs' accounts to Plaintiffs at their home in Villanova;
- the conduct of Mason and Defendants underlying Plaintiffs' claims occurred while Plaintiffs resided in this judicial district;
- Plaintiffs discovered the underlying conduct of Mason and Defendants while they resided in this district; and
- Mason initiated and received some if not all of the fraudulent transfers regarding Plaintiffs' funds while in this district.

Plaintiffs commenced this action by filing a complaint in the Philadelphia Court of Common Pleas. Defendants removed the instant case to this Court based on diversity jurisdiction and, thereafter, filed the underlying motion to dismiss for improper venue, or, in the alternative, to transfer venue. Defendants argue that venue is improper in this district and that Plaintiffs violated the forum selection clause of the Note by bringing this action in Pennsylvania state court rather than a New York court. Plaintiffs oppose the motion.

**LEGAL STANDARD**

As noted, Defendants move to dismiss this case for improper venue pursuant to Rule 12(b)(3) or, in the alternative, to transfer venue to the Southern District of New York ("SDNY") consistent with the forum selection clause in the Note. These two arguments will be separately discussed.

Under Rule 12(b)(3), a court may grant a motion to dismiss if venue is improper. Fed. R. Civ. P. 12(b)(3). "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great Western Min. & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011). When evaluating a Rule 12(b)(3) motion, the district court must accept all well-pleaded allegations in the complaint as true. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). A court may also consider the parties' affidavits. *See Sec. & Exch. Comm'n v. Cooperman*, 243 F. Supp. 3d 597 (E.D. Pa. 2017); *Fellner ex rel. Est. of Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351 at *1 (E.D. Pa. Oct. 18, 2005) ("In considering a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint, although the parties may submit affidavits in support of their positions"); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982) (considering both parties' affidavits in ruling on a motion to dismiss).

Even where venue is proper, a district court may still transfer a case to another federal district pursuant to 28 U.S.C. § 1404(a) on the basis of *forum non conveniens*. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where the parties have agreed to a forum-selection clause, a motion to transfer should be considered pursuant to 28 U.S.C. § 1404(a). *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013).

**DISCUSSION**

**I.**  *Motion to Dismiss for Improper Venue*

Generally, 28 U.S.C. § 1391 governs venue in federal court. Specifically, § 1391(b) provides:

> A civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3).

"[V]enue is proper so long as the requirements of [the federal venue statute] are met, irrespective of any forum-selection clause . . . ." *Atl. Marine*, 571 U.S. at 57. As such, the inclusion of a forum-selection clause in the parties' governing contract does not render venue either proper or improper. *Id.* at 55, 57; *see also 123 Exteriors, Inc. v. North Star Exteriors, LLC*, 2018 WL 3642221, at *3-4 (E.D. Pa. Aug. 1, 2018). Rather, the determination is made irrespective of a forum selection clause. *Id.*

Defendants correctly argue that §§ 1391(b)(1) and (3) are inapplicable to this action since no Defendants reside in and/or are citizens of Pennsylvania and an alternate forum exists in which venue may be proper. Therefore, venue is proper in this district if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . ." in this district. 28 U.S.C. § 1391(b)(2). As alleged, Plaintiffs' claims are premised primarily on their allegations of Mason's wrongful and unauthorized use of Plaintiffs' JP Morgan accounts/line of credit — allegations that occurred within this district.

As previously noted, in support of venue within this district, Plaintiffs allege that they maintain their primary residence in Villanova, Pennsylvania; they retained Mason as a financial advisor, who, at the time of the events in this action, maintained his practice in Gladwyne, Pennsylvania; Mason's employer, Rubicon Wealth Management, is headquartered in Gladwyne, Pennsylvania; Defendants regularly sent communications regarding Plaintiffs' accounts to Plaintiffs at their Villanova home; Plaintiffs' claims are premised on Mason's and Defendants' underlying conduct, which occurred and was discovered while Plaintiffs resided in Villanova; and Mason initiated and received some, if not all, of the fraudulent transfers regarding Plaintiffs' funds while in this district.

Based on these allegations, this Court finds that a substantial part of the events or omissions giving rise to the claims occurred within this judicial district. Defendants have not refuted that these events occurred in this district. As such, this Court finds that venue is proper in this district. Since venue is proper within this judicial district, Defendants' motion to dismiss for improper venue is denied.

## II.     *Alternative Motion to Transfer Venue for Forum Non Conveniens*

Having determined that venue is proper in this district, this Court turns to Defendants' alternative argument to transfer this matter to the SDNY pursuant to 28 U.S.C. § 1404(a) and the forum selection clause in the Note. To determine whether venue is more convenient in the SDNY, the Court must analyze several factors set out by the United States Court of Appeals for the Third Circuit (the "Third Circuit") in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). However, before this Court undertakes that analysis, it will consider Plaintiffs' arguments as to why the forum selection clause, which is entitled to a presumption of validity, is invalid due to fraud or overreaching. If the forum selection clause maintains its presumption of validity despite

Plaintiffs' arguments, this Court will then analyze the factors alluded to above, and set forth in greater detail herein, to determine if they weigh in favor of a transfer to SDNY.

### A. Whether the Forum Selection Clause is Valid

Following the decision in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Third Circuit has held that forum-selection clauses, like the one at issue here, are entitled to great weight and are presumptively valid. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). Interpreting *Bremen*, the Third Circuit held:

> [A] forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

*Id.* Plaintiffs appear to advance several arguments to show that the forum selection clause is not entitled to a presumption of validity because of fraud or overreaching. This Court will address each argument.

### 1. Whether the forum selection clause was a result of fraud

Plaintiffs contend that the promissory notes associated with the extensions of the Line of Credit after their perceived repayment were the result of fraud. As pled in the underlying state court complaint, Mason submitted "forged documents" and "forged signatures." (ECF 1-1, at ¶¶ 50-51). As such, Plaintiffs argue that Mason's fraudulent actions would, in turn, render the forum selection clauses in the original Note invalid and inapplicable.

"[A] party who relies on fraud or forgery has the burden in the first instance of proving the facts upon which the alleged fraud or forgery is based, and these facts must be established by evidence that is clear, direct, precise, and convincing." *CoActiv Capital Partners, Inc. v. Feathers*, 2009 WL 1911673, at *3 (E.D. Pa. July 1, 2009) (quoting *Carlson v. Sherwood*, 206 A.2d 19, 20

7

(1965) (internal quotation marks omitted)). Plaintiffs allege that later iterations of the 2010 Note contained forged documents and signatures that allowed Mason to continue the line of credit without their knowledge or permission, yet they provide no evidence or proof that these later documents contain fraud or forgery, as is required when alleging fraud. The only evidence of an agreement between the parties provided in this case is the 2010 Note, which they do not allege contains fraud or forgery.

Plaintiffs concede that they consensually entered into the agreement for a line of credit from J.P. Morgan Bank, as memorialized in the 2010 Note. (ECF 1-1, at ¶ 46). As noted, the 2010 Note controls and the forum selection clause present in the Note was consensually agreed to by the parties. As such, Plaintiffs are unable to overcome their burden with this argument to show that the governing agreement was "the result of fraud or overreaching." *Coastal Steel*, 709 F.2d at 202.

Plaintiffs also argue that, even if the 2010 Note were to control, its forum selection clause is inapplicable because the unauthorized extensions of the line of credit render the entire agreement void due to fraud. Defendants disagree, relying on the premise that "[t]he specific inquiry is whether the clause itself — not the broader contract — was fraudulently induced." *Williams v. Rent 2 Own Trailers, LLC*, 2025 WL 409659 at *3 (E.D. Pa. Feb. 4, 2025) (citing *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, (3d Cir. 2003)). This Court agrees with Defendants. As this Court has found, the 2010 Note controls. Plaintiffs have also conceded that they consensually signed and entered into an agreement with Defendants which contained the forum selection clause. As noted, Plaintiffs have offered no argument that the 2010 Note was procured by fraud.

### 2. *Whether the forum selection clause extends beyond expiration of the Note*

Plaintiffs argue that there is "no valid contract between Plaintiffs and Defendants after Plaintiffs repaid the initial line of credit issued in 2010." (Pls.' Resp., ECF 11 at p. 8). This argument is misplaced and belied by the allegations underlying Plaintiffs' claims which are premised on the existence of a contractual relationship, including the line of credit, and the continuation of the rights and obligations set forth in the Note.

### 3. *Whether Plaintiffs' claims "arise out" of the Note*

Plaintiffs also argue their claims do not arise out of the Note, and thus, are not subject to the forum selection clause. The forum selection clause requires that all actions "arising out of" the Note be heard in any New York State or United States federal court sitting in New York City. Plaintiffs argue that their claims do not arise out of the Note, rendering the forum selection clause inapplicable. Accordingly, this Court must consider the meaning of the phrase "arising out of" in the forum selection clause.[1]

Plaintiffs argue that their claims do not arise out of the 2010 Note because they allege their belief that the Note had been effectively terminated by their payment of its balance. These arguments, however, do not trump or dissipate Plaintiffs' other allegations expressly relying on the Note underlying the line of credit. Moreover, forum selection clauses generally continue in force beyond the expiration of a contract where the plaintiff's claims "involve rights arising out of the contract and the entire business relationship between the parties stems from that contract." *Weingard v. Telepathy, Inc.*, 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) (holding that the expiration of a contract did not bar enforcement of the forum selection clause it contained); *see also AAMCO*

---

[1] The parties agree that the interpretation of this clause should be made under New York Law. Regardless, New York and Pennsylvania law appear not to be in conflict with respect to the interpretation of the relevant phrase.

9

*Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700 (E.D. Pa. 2014) (forum selection clause surviving termination of contractual agreement).

New York courts have interpreted "arising out of" to "mean originating from, incident to, or having connection with." *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005); *see also Regal Constr. Corp. v National Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34 (2010) (holding that the term "arising out of" requires a causal connection between an injury and an insured person's operations in determining whether an injury is covered by a contract). The same is true "[u]nder Pennsylvania law[;] a policy provision containing the phrase 'arising out of' is satisfied by '[b]ut for' causation, i.e., a cause and result relationship." *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734 (E.D. Pa. 2020) (quoting *Mfrs. Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 170 A.2d 571, 573 (1961)).

Here, Plaintiffs' breach of contract claim is expressly connected to the Note. Specifically, in their breach of contract claim, Plaintiffs allege that "J.P. Morgan . . . had an express and/or implied obligation under . . . agreements to ensure that any actions taken regarding the Tulins' funds—including extending and authorizing draws from the Line of Credit and executing financial transactions—were done with the proper authorization from the Tulins." (ECF 1-1 at ¶ 103). Further, Plaintiffs allege that Defendants breached their duties under its agreements with Plaintiffs by failing to 1) "[c]onduct proper due diligence and verify whether Mason had obtained authorization from the Tulins to renew and make additional draws from the Line of Credit," and 2) "[v]erify the legitimacy of documents, including signatures, that Mason submitted to renew the Line of Credit;" (*Id.* at ¶ 104). Similarly, Plaintiffs' other claims are all premised on allegations that Defendants were complicit with respect to Mason's fraudulent and unauthorized use of

10

Plaintiffs' line of credit, memorialized in the Note that contains the forum selection clause. Based on these allegations, Plaintiffs' claims arise out of the Note.

### 4. *Whether non-signatories are bound by the forum selection clause*

Plaintiffs argue that the forum selection clause, if found to be valid and controlling, only binds Plaintiffs and Defendant JP Morgan Chase Bank because only those parties are the signatories to the Note. Plaintiffs argue that, since JP Morgan Chase Bank is the only defendant signatory to the Note, should this Court not retain jurisdiction over JP Morgan Chase Bank, this Court could nevertheless continue to hear this action against the remaining four defendant non-signatories, effectively severing this case. This result would be unacceptable.

Defendants argue that the remaining four defendants that did not sign the controlling Note are "closely related" to the signatory, allowing them to be bound by the forum selection clause it contains. (ECF 8-2, at p. 4, n.2). Defendants rely on *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015), which held that non-signatories to an agreement can be bound if they are so closely related to the signatory party that it is foreseeable for them to be bound. "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties and whether the non-signatory received a direct benefit from the agreement." *Id.* Foreseeability, as required to enforce a forum selection clause against a non-signatory, is likewise required to enforce the clause by a non-party. *In re Mushroom Transp. Co., Inc.*, 247 B.R. 395, 398 (E.D. Pa. 2000).

By asserting claims against all five defendants for each of the six counts, Plaintiffs appears to concede the closeness of the relationship between all Defendants. Plaintiffs refer to all Defendants together as J.P. Morgan, failing to differentiate the allegations against each individual

Defendant as to the breach of contract claim and provide only the 2010 Note as a relevant contractual agreement. (ECF 1-1 at ¶ 105). In doing this, Plaintiffs have affirmed that the sufficiency of the relationship between all Defendants, as one parent and four subsidiary organizations, is such that it is unnecessary or even impossible to differentiate between the harms allegedly committed by each defendant individually, although only one Defendant is a signatory to the controlling Note. This Court accepts this contention and agrees that the Defendants are sufficiently closely related to be bound together by the forum selection clause.

*Carlyle* also notes that "if one claim is not removable due to a forum selection clause, the other claims may not be severed and removed. To hold otherwise would be to invite piecemeal litigation and to allow plaintiffs to circumvent forum selection clauses through artful pleading of additional claims." *Id*. at 221. Further, in light of the principle of judicial economy, it is more efficient for this action to be heard against all defendants in the same forum. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017) ("[J]udicial economy considerations weigh against transfer when a separate case involving 'the same or similar legal and factual issues' [exist]"); *Arnold v. Wormuth*, 2023 WL 7185567 (E.D. Pa. Oct. 31, 2023) (finding that all claims will be litigated in the same forum due to an "interest in judicial economy and expediency [which] compels the Court to keep . . . claims together" following a *Jumara* factor analysis).

Consistent with the caselaw cited above, this Court concludes that all five J.P. Morgan entities are bound by the forum selection clause in the Note and that the forum selection clause maintains its presumption of validity. As such, this Court will next analyze the *Jumara* factors to determine if venue is more convenient in the SDNY.

### B. *Whether the Jumara Factors Support Transferring to the Southern District of New York*

Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of transferring venue under § 1404(a) "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In determining whether a transfer is appropriate, "the district court is vested with a wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).

The analysis of a request for transfer under § 1404(a) generally has two components. First, both the original venue and the requested venue must be proper. *Jumara*, 55 F.3d at 878. As set forth above, this Court has determined that venue is proper in this district. Considering Defendants' collective motion to transfer this matter to the SDNY, and since Plaintiffs do not allege that venue is improper in SDNY, the Court must undertake a balancing test to decide whether the convenience of the parties and witnesses and the interest of justice would be better served by a transfer to a different forum. *See Jumara*, 55 F.3d at 879; *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 197 (E.D. Pa. 2008). When determining whether a transfer is warranted, a court ordinarily weighs the following private and public interests:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

13

> The public interests have included: the enforceability of the judgment[;] the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879–80 (citations omitted).[2]

The party seeking the transfer of venue bears the burden of establishing the need for the transfer. *Id.* at 879.[3] "Transfer is not warranted, however, if the result is merely to shift the inconvenience from one party to the other." *DermaMed, Inc. v. Spa de Soleil, Inc.*, 152 F. Supp. 2d 780, 783 (E.D. Pa. 2001). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Penn Mut. Life Ins. Co. v. BNC Nat. Bank*, 2010 WL 3489386, at *8 (E.D. Pa. Sept. 2, 2010) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

However, the analysis changes "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine*, 571 U.S. at 63 (citation omitted). Where there is such a valid forum-selection clause, it "should be given controlling weight in all but the most exceptional cases." *Id*. at 63 (internal alteration omitted). In addition, the *Atlantic Marine* Court held that where the plaintiff defied the parties' forum-selection clause by filing in a non-chosen forum, the plaintiff "bear[s] the burden of

---

[2] Though the *Jumara* court included the "practical considerations that could make the trial easy, expeditious, or inexpensive" as a public interest factor, the Third Circuit later clarified such consideration to be a private interest factor. *In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 402 n.7 (3d Cir. 2017).

[3] "Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." *Fellner ex rel. Estate of Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

14

showing that public-interest factors overwhelmingly disfavor a transfer." *Id*. at 67. Unless extraordinary circumstances exist that do not relate to the parties' convenience, the district court should then transfer the case pursuant to the forum-selection clause. *Id*. at 62.

The Supreme Court has made it clear, however, that where a valid forum selection clause exists, as is the case here, a district court must consider only the public interest factors, and not the private interest factors. *Atl. Marine*, 571 U.S. at 64*; see also Spin Master Ltd. v. Ent. Bus., LLC*, 2024 WL 3850796 (E.D. Pa. Aug. 15, 2024) ("[A] court considering a transfer when faced with a forum selection clause 'should not consider arguments about the parties' private interests,' reasoning that the parties 'waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses' when they selected the forum in the first instance." (citations omitted).

"The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Camber Spine Techs. v. Intermed Res. TN, LLC*, 2023 WL 5182597 (E.D. Pa. Aug. 11, 2023) (citing *Jumara*, 55 F.3d at 879-80).

In addition, the Supreme Court held that where the plaintiff defied the parties' forum selection clause by filing in a different forum, as Plaintiffs did here, the plaintiff "bear[s] the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added). Accordingly, this Court must consider the *Jumara* public interest factors and determine whether they "overwhelmingly" favor litigation of this matter in this forum. *Id*. Each of these factors will be addressed separately.

### 1. Enforceability of the judgment

Defendants have proffered the argument that judgment of this action is enforceable in the SDNY pursuant to the controlling forum selection clause. However, this Court has determined that venue is also proper in the Eastern District of Pennsylvania, where the action was filed, and, as such, the judgment would also be enforceable here. This enforceability of the judgment factor is neutral, because a judgment in either this Court or in the SDNY is equally enforceable. *See Schlenker v. Immucor, Inc.*, 2009 WL 5033972, at *5 (E.D. Pa. Dec. 22, 2009) (finding the enforceability *Jumara* factor neutral, reasoning that a judgment would be equally enforceable in both Pennsylvania and Georgia).

### 2. Practical considerations that could make the trial easy, expeditious, or inexpensive

Courts in this district have held that a plaintiff's and witnesses' proximity to the forum, as well as the notion that "a new court would have to learn the facts of the case and the proceedings would be delayed" is relevant in considering this factor. *Carter v. United States*, 2010 WL 3322704 (E.D. Pa. Aug. 20, 2010). However, as previously found, Plaintiffs have waived the right to defend their chosen forum on the basis on convenience where there is a valid forum selection clause in effect. In light of this, this factor weighs in favor of transfer. *See* i*Games Ent., Inc. v. Regan*, 2004 WL 2538285, at *5 (E.D. Pa. Nov. 9, 2004) (granting a defendant's motion to transfer venue where plaintiffs failed to demonstrate why they should not be bound by a forum selection clause in which they expressly waived any defense based on inconvenient forum).

### 3. Relative administrative difficulties in the two fora resulting from court congestion

Neither party raises any argument regarding the courts' congestion. Since this Court finds no clear indication that administrative difficulty of litigating weighs strongly in either forum, this factor is considered neutral.

4. *Local interests in deciding local controversies at home*

Defendants do not make an argument as to the interest of New York in deciding this case. Conversely Plaintiffs argue that "it is Pennsylvania who has an interest in deciding the 'local controvers[y]' of Defendants' complicity in a fraud perpetrated by a Pennsylvania financial advisor against Pennsylvania residents." (ECF 11, at p. 13). While the underlying issues between Mason and Plaintiffs appear to be local, it is the J.P. Morgan entities, not Mason, who are Defendants in this case. The principal place of business and "common geographical locus" of the parent entity in this action, J.P. Morgan, is New York. Thus, this indicates that New York['s] "interest in deciding these controversies appears to be greater than that of this forum." *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021). Since New York law will be applied in these proceedings, and New York may have a similar interest in hearing the controversy due to the Defendants' prominence and location in the state, this factor weighs in favor of transfer to New York.

5. *Public policies of the fora*

Plaintiffs have not extended an argument that enforcement of the forum selection clause would violate a strong public policy of this forum. Defendants argue that an application of these factors to the facts of the instant case reveals that public policy is not violated in enforcing the relevant forum selection clause. (ECF 8-2, at p. 10). In the analysis above, this Court has concluded that enforcement of the clause does not go against public policy in Pennsylvania because there is no reason to believe that either party will be deprived of its day in court if the clause is enforced. The same argument stands as applied to New York. Therefore, this factor is considered neutral.

### 6. *Familiarity of the trial judge with the applicable law*

This Court has concluded that, consistent with the provision in the Note, New York law governs the litigation regarding the Note's interpretation. Defendants argue that the SDNY is more familiar than this Court with the applicable law. *Id*. This Court agrees. As such, this final *Jumara* factor weighs in favor of transferring venue to New York.

In sum, this Court finds that Plaintiffs have not met their burden under *Atlantic* of showing that the public factors weigh "overwhelmingly" in favor of venue in this Court. Accordingly, this action will be transferred to the United States District Court for the Southern District of New York.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss for improper venue is denied. Defendants' alternative request to transfer this matter is granted. Accordingly, this matter will be transferred to the United States District Court for the Southern District of New York. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.